UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK D. FOLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>RUSLAN LOZOVOY, et al.,<br><br>    Defendants. | Case No.: 1:16-cv-01119-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS AMENDING COURT'S MARCH 15, 2017, ORDER AND FINDING COMPLAINT APPROPRIATE FOR SERVICE AS TO CERTAIN DEFENDANTS AND CLAIMS AND DISMISSING REMAINING DEFENDANTS AND CLAIMS<br><br>[ECF Nos. 11, 13, 14] |

Plaintiff Mark D. Foley is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL BACKGROUND**

On March 15, 2017, the Court found that Plaintiff's first amended complaint stated a cognizable claim for deliberate indifference to a serious medical need against Defendants R. Lozovoy, S. Lopez, E. Vitto, E. Ramirez, H. Ducusin, C. Triesch, and one Doe Defendant. In that order, as pointed out by Plaintiff in his motion for clarification filed April 3, 2017, the Court inadvertently failed to state or find that Plaintiff also stated a cognizable claim for deliberate indifference against Defendant Mason as well as the other Defendants. In his April 3, 2017, filing Plaintiff indicates that if the Court finds that Plaintiff states a cognizable claim against Defendant Mason as well as the other identified Defendants, Plaintiff is agreeable to proceeding against only those Defendants for deliberate

1

indifference and dismissing all remaining Defendants and claims. Because the Court finds that Plaintiff's first amended complaint states a cognizable claim against Defendant Mason as well as the other Defendants, the Court will recommend this action proceed on Plaintiff's deliberate indifference claim only and dismiss all remaining claims and Defendants.

## II.
## SCREENING REQUIREMENT

The Court is required to screen Plaintiff's first amended complaint and dismiss the case, in whole or in part, if the Court determines it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Walmart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121-23 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678.

## III.
## COMPLAINT ALLEGATIONS

Plaintiff names Correctional Officer Mason, Nurse Practitioner Ruslan Lozovoy, Chief Medical Executive Sherry Lopez, Licensed Vocational Nurses E. Vitto and E. Ramirez, Registered

Nurses Orlando Regino and H. Ducusin, Supervising Nurse C. Triesch, and Does 1 through 10, as Defendants.

Prior to July 11, 2015, Defendants Lopez and Triesch instituted a practice and policy at Kern Valley State Prison (KVSP) that medical personnel, including the named Defendants, were to treat every inmate complaining of pain as faking his symptoms in order to gain pain medication to get high. Further, no inmate complaint of pain was to be treated unless and until the inmate was able to prove to medical personnel and the named Defendants that their symptoms were real and in need of medical attention.

On July 11, 2015, shortly after lunch, Plaintiff began to feel ill and began to experience abdominal pain. Plaintiff informed his cellmate that he was not feeling well and was going to lie down and rest. Plaintiff attempted to rest but the pain continued to increase. At approximately 3:00 p.m., the pain had worsened and Plaintiff began to vomit.

As the evening progressed, Plaintiff continued to vomit and his abdominal pain had become severe. Plaintiff could do nothing but lie on his bunk in severe pain.

On July 12, 2015, at approximately 5:00 a.m., Plaintiff's cellmate flagged down Defendant officer Mason. He explained to Defendant Mason that Plaintiff was in medical distress and needed immediate medical attention. Defendant Mason asked Plaintiff what was wrong, and Plaintiff who was on his bunk, curled in a ball, holding his abdomen, stated "I have severe abdominal pain and have been vomiting since the afternoon. I need medical attention." Defendant Mason stated that Plaintiff would have to wait until 6:00 a.m. because there was nothing she could do until then, but she would notify the medical department. Plaintiff objected stating, "I'm in severe pain. I need medical help right now." Defendant Mason stated, "You'll have to wait until 6:00 a.m.," and walked away.

Defendant Mason deliberately delayed summoning medical assistance for Plaintiff because her shift was ending at 6:00 a.m. and she did not want to do the paperwork for a medical emergency. Defendant Mason failed to take steps to ensure that Plaintiff receive the needed medical treatment, despite her knowledge of Plaintiff's extreme medical distress.

On July 12, 2015, at approximately 6:10 a.m., Plaintiff still had not been called to the medical department, so Plaintiff's cellmate called the control booth officer and informed him that Plaintiff was

in extreme medical distress and that Defendant Mason was supposed to have informed second watch officers of Plaintiff's need for emergency medical attention. The control booth officer stated he was unaware of Plaintiff's medical emergency and would contact the medical department.

At approximately 6:30 a.m., when medical personnel still had not arrived, Plaintiff's cellmate again called to the control booth officer. At that time, he informed Plaintiff that Defendant Ramirez was aware of Plaintiff's complaint and would arrive shortly as he was "loading his cart" with that days medications.

Prior to arriving at Plaintiff's housing unit, Defendant Ramirez, operating under the practice and policy of Defendants Lopez and Triesch, had already formed the opinion that Plaintiff was faking his symptoms in order to receive pain medication, and not really experiencing a medical emergency,

At approximately 6:50 a.m., Defendant Ramirez arrived at Plaintiff's housing unit. Defendant Ramirez did not go to Plaintiff's cell, instead he required Plaintiff to go to him to be examined. Plaintiff's cell door was open, but he was unable to stand erect or walk without assistance due to severe abdominal pain. Plaintiff's cellmate helped Plaintiff walk down the stairs, across the dayroom and out to the rotunda, where Defendant Ramirez was sitting. Defendant Ramirez took Plaintiff's vital signs and asked Plaintiff to describe his symptoms. Plaintiff informed Defendant Ramirez that he had been experiencing severe abdominal pain since the previous day and that the pain had become worse overnight. In addition to the abdominal pain, Plaintiff had been vomiting a foul smelling substance. Defendant Ramirez asked Plaintiff if he could walk to the clinic, and Plaintiff told him that would not be possible.

Instead of altering additional medical personnel of Plaintiff's medical emergency, Defendant Ramirez sent Plaintiff's cellmate to the clinic to retrieve a wheelchair. Once Plaintiff's cellmate returned with the wheelchair, Defendant Ramirez informed Plaintiff's cellmate to dress Plaintiff and push him to the clinic, which Plaintiff's cellmate did. Defendant Ramirez abandoned his medical duty to Plaintiff, even after noting that Plaintiff appeared to be in extreme medical distress, because he believed Plaintiff was faking his symptoms.

Prior to arriving at the medical clinic, Defendants Ducusin, Lozovoy and Doe, operating under the practice and policy of Defendants Lopez and Triesch, had already formed the opinion that Plaintiff

was faking his symptoms in order to receive pain medication, and was not really experiencing a medical emergency.

Upon arrival at the clinic, Plaintiff was met by Defendant Ducusin, who proceeded to take Plaintiff's vitals and asked Plaintiff to describe his symptoms. Plaintiff explained that his symptoms began the previous day and had become severe overnight. Plaintiff informed Defendant Ducusin that he could not hold anything down, was vomiting a foul smelling substance, could not have a bowel movement, and the pain and cramps were severe and located in Plaintiff's lower abdomen. Defendant Ducusin made a telephone call to Defendant Lozovoy. Plaintiff could clearly hear Defendant Ducusin recite Plaintiff's vitals and symptoms to Defendant Lozovoy. Defendant Lozovoy, without ever examining or talking to Plaintiff, simply ordered Defendant Ducusin to give Plaintiff IV fluids and a 25mg injection of Phenergen to combat Plaintiff's nausea and vomiting. Plaintiff continued to complain to Defendant Ducusin that his abdominal pain was becoming unbearable. Defendant Ducusin told Plaintiff, "Lozovoy said your vital signs are fine so there is nothing seriously wrong with you." Plaintiff continued to plead with Defendant Ducusin and begged for medical assistance. All of Plaintiff's pleas were ignored because Defendants Ducusin and Lozovoy believed Plaintiff was faking his symptoms to get pain medication.

Defendant Ducusin then ordered Plaintiff to return to his housing unit. Defendant Ducusin informed Plaintiff he would be "seen in the morning on RN line and doctor's line in approximately five (5) days." Plaintiff continued to complain to Defendant Ducusin that he was experiencing severe abdominal pain. Defendant Ducusin stated, "I don't believe you," and had Plaintiff escorted back to his housing unit.

Defendant Lozovoy failed to order tests that were suggested by the elemental and classic symptoms of a lower bowel blockage, i.e. persistent severe lower abdominal pain, vomiting, nausea and inability to have a bowel movement.

After being returned to his cell, Plaintiff could do nothing but lie in bed, in severe pain. At approximately 6:30 p.m., Plaintiff notified unit staff that he was in medical distress, with severe abdominal pain and required emergency medical assistance. Plaintiff's floor officer called medical and advised Defendant Vitto and Defendant Doe of Plaintiff's complaint and he was unable to walk.

1  Prior to arriving at Plaintiff's housing unit, Defendant Vitto and Defendant Doe, operating under the
2  practice and policy of Defendants Lopez and Triesch, had already formed the opinion that Plaintiff
3  was faking his symptoms in order to receive pain medication, and was not experiencing a medical
4  emergency.
5       At approximately 6:35 p.m., Defendant Vitto and Defendant Doe arrived at Plaintiff's housing
6  unit.  Defendant Vitto and Defendant Doe refused to go to Plaintiff's cell and would only see Plaintiff
7  if he could walk to them.  Plaintiff, with the assistance of his cellmate, walked down the stairs to the
8  wheelchair, and was wheeled out to the rotunda to be seen by Defendants.  Plaintiff informed
9  Defendants Vitto and Defendant Doe that he had been experiencing severe abdominal pain and
10 vomiting since July 11, 2015, and that the pain and vomiting was continuing to get worse.  Defendant
11 Vitto took Plaintiff's vitals and made a telephone call to Defendant Doe.  Defendant Vitto then
12 informed Plaintiff that Defendant Regino said, "You've already been checked out today and there is
13 nothing seriously wrong with you."  Defendant Doe then stated to Plaintiff, "[t]he level of pain you
14 claim to be experiencing is not reflected in your vitals."  Plaintiff continued to explain to Defendants
15 Vitto and Doe that the pain and vomiting were real and Defendant Vitto stated, "[y]ou are not getting
16 any more pain medication."  Plaintiff stated, "I'm not on ANY pain medication."  Defendants Vitto
17 and Doe both began to laugh and Defendant Doe stated, "[n]or will you be."  After Plaintiff continued
18 to request for assistance, Defendant Vitto stated, "You'll be seen by the doctor in the morning."
19      As Plaintiff arrived back at his cell, he realized he had left his ID card in the rotunda.
20 Plaintiff's cellmate said he would go and get it.  As Plaintiff's cellmate entered the rotunda he
21 encountered Defendants Vitto and Doe, who were waiting to exit the building,  Defendants Vitto and
22 Doe were laughing and joking about Plaintiff and how he was not a "very good actor" and that he
23 shouldn't look for any "acad[e]my awards" in the future.
24      Over the next approximate seventeen hours, Plaintiff could do nothing but lie in bed in extreme
25 pain and suffering.  Plaintiff could not sleep, eat or have a bowel movement.  Plaintiff's severe
26 abdominal pain continued to worsen with each passing hour and Plaintiff continued to vomit a foul
27 smelling substance.
28

1  On July 13, 2015, at approximately 11:00 a.m., when Plaintiff had still not been called to
2  medical, Plaintiff contacted his control booth officer and informed him that Plaintiff was in need of
3  emergency medical care. Plaintiff was informed, by the control booth officer, that he had called
4  medical and Plaintiff would be seen in medical, if he could walk to the clinic. As Plaintiff was in need
5  of medical assistance, Plaintiff forced himself to walk over to the clinic to be seen by medical
6  personnel.

7  Once in the clinic, Plaintiff was examined by Registered Nurse H. Tuhin, who took Plaintiff's
8  vital signs, listened to his abdomen and asked Plaintiff to describe his symptoms. After Plaintiff
9  described his symptoms to Tuhin, he telephoned Dr. Dileo, who immediately ordered an x-ray of
10 Plaintiff. Following the x-ray, Plaintiff was diagnosed with a lower bowel blockage and immediately
11 transported to the outside hospital for further medical treatment. Once at the hospital, it was
12 determined that Plaintiff would require surgical intervention to correct the bowel blockage. Plaintiff
13 underwent surgery and remained in the hospital for seven days until he returned to Kern Valley State
14 Prison on July 20, 2015.

15 On October 1, 2015, Plaintiff was interviewed by Defendant Triesch pursuant to Plaintiff's
16 grievance concerning Defendants failure to provide Plaintiff appropriate medical treatment.
17 Defendant Triesch stated to Plaintiff that, her staff (Defendants) were not deliberately indifferent to
18 Plaintiff's serious medical needs and responded appropriately to Plaintiff's medical complaint.["]
19 Plaintiff explained to Defendant Triesch that Defendants Ramirez, Vitto, Lozovoy, Ducusin, Regino,
20 and Doe did not respond appropriately to Plaintiff's medical complaint because they believed Plaintiff
21 was faking his symptoms in order to receive pain medication. Defendant Triesch stated, "When you
22 complained of abdominal pain, they gave you Phenergan for the pain." Plaintiff stated, "That's not
23 true, the Phenergan was not for pain, it was to keep me from vomiting." Defendant Triesch admitted
24 the Phenergan was for vomiting, but then stated, "Keeping you from vomiting helps with the pain."
25 Plaintiff responded, "Not in my case as I could not defecate and had been vomiting a greenish/brown
26 foul smelling substance, so when I couldn't vomit, it caused my pain and suffering to worsen and my
27 abdom[en] to swell."
28

7

## IV.

## DISCUSSION

### A. Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Based on Plaintiff's allegations in the first amended complaint, Plaintiff states a cognizable claim for deliberate indifference against Defendants R. Lozovoy, S. Lopez, E. Vitto, E. Ramirez, H. Ducusin, C. Triesch, Mason, and one Doe Defendant; however, Plaintiff fails to state a cognizable

8

claim against Defendant Regino and Does 2 through 9, and those Defendants should be dismissed from the action. As in Plaintiff's original complaint, with regard to Defendant Regino Plaintiff alleges only that he stated, "You've already been checked out today and there is nothing seriously wrong with you." In addition, with the exception of one Doe Defendant, Plaintiff fails to link any of the Doe Defendants to alleged actions or inactions that give rise to the alleged constitutional violation. Accordingly, Plaintiff fails to state a cognizable claim against Defendant Regino and Doe Defendants 2 through 9.

### B.      Denial of Inmate Appeal

To the extent Plaintiff attempts to seek relief against Defendant C. Triesch for denial of his inmate appeal, such claim does not give rise to a claim for relief.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, because prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett v. Penner, 439 F.3d at 1098, there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. That circumstance has not been presented here.

In this instance, Defendant Triesch denied Plaintiff's inmate appeal about a medical problem that already had occurred and been resolved, thus, there is no constitutional violation alleged. Accordingly, Plaintiff fails to state a cognizable claim against Defendant Triesch for denial of his inmate appeal.

///

///

### C. Declaratory Judgment

Plaintiff seeks a declaratory judgment that his Eighth Amendment rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary and this action shall proceed for monetary damages.

### D. Transfer to Mule Creek State Prison

As part of relief, Plaintiff requests that he be transferred to Mule Creek State Prison, a high risk medical prison. However, Plaintiff has not right to incarceration in a prison of his choice, and therefore no such request can be granted. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any institution without offending the Constitution). Accordingly, Plaintiff is not entitled to request a transfer to a different prison facility as relief by way of section 1983 complaint.

## V.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's claim for deliberate indifference to a serious medical need in violation of Eighth Amendment against Defendants R. Lozovoy, S. Lopez, E. Vitto, E. Ramirez, H. Ducusin, C. Triesch, Mason, and one Doe Defendant;

2. All other Defendants and claims be dismissed from the action for failure to state a cognizable claim for relief;

3. Plaintiff's request for declaratory judgment and transfer to Mule Creek State Prison be dismissed; and

4. The matter be referred back to the undersigned for initiation of service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 4, 2017**

UNITED STATES MAGISTRATE JUDGE